May it please the court, my name is Karen Davis, and I represent the petitioner, Michael Leita Regassa. Petitioner now uses the anglicized pronunciation of his name. However, it was pronounced Mikael in Ethiopia. At the immigration hearing, Mr. Regassa testified that he fears returning to Ethiopia because he suffered past persecution there and accounts of an imputed political opinion. The Board of Immigration Appeals affirmed the immigration judge's decision, finding that Mr. Regassa is not credible, and denying the asylum application. However, the Board did not issue its own reasoned opinion. Therefore, this Court reviews the IJ's decision. Mr. Regassa asserts that the adverse credibility finding was not supported by substantial evidence, and that the facts compel this Court to overturn the Board's decision. The facts are, briefly, that Mr. Regassa was at home with his mother one night in April 2001. He was 16 years old at the time. Three police officers came to the home and said that they wanted him for questioning. They took him to the Warrietta 10 police station, where they questioned him about his connections with the Oromo Liberation Front, asked him about some university students, and asked about his brother, Zafu. Zafu had been arrested in January 2000 on suspicion that he had some connection with OLF. Zafu was beaten during his detention and fed Ethiopia a few months after his release. Mr. Regassa testified that while he does not belong to the OLF or have any connection to this organization, the Ethiopian government nevertheless assumed he did because he's Oromo, and his parents, who owned a grocery store, are considered to be wealthy. Let me ask you a question in terms of that. I think we're familiar with the facts. But why don't, number one, the discrepancies, inconsistencies in Regassa's story about how and when he obtained his identification documents, two, his vagueness about how those documents were prepared, and, three, the authenticity problems suggested by the forensic report combined to raise substantial questions about Regassa's identity and credibility? I would reject that conclusion, Your Honor, because the FDL letter was not unequivocal about whether or not the documents were authentic. Well, break them into two parts. They said one thing about documents, one and two, and something else about three and four. So let's just talk about the ones where they stated generally that they are not legitimate. The FDL reference collection does not contain genuine specimens to which these documents may be compared. But it says they should not be considered bona fide identity documents. That's a fairly definite statement. Your Honor, it says Exhibits 3 and 4, which Exhibits 3 and 4 were the Amharic language letter, and the Amharic language documents were the Amharic language documents. And the FDL reference collection, the FDL reference collection, was not offering those documents to prove his identity. Rather, he was offering his original Addis Ababa City identification card, which the letter makes no reference to in terms of whether there are any anomalies on it. So are you suggesting that we – you know, I guess are you suggesting that we parse it out? You're conceding that those three and four are problematic, but you're saying one and two are fine? Actually, I'm not even saying that three and four are problematic. I'm saying that we don't have enough information from what the FD – the forensic documents lab says. Well, whose burden is it? Well, it's the Respondent's burden of proof. And he, on the one hand – When you're saying the Respondent, you're talking about the government? Oh, I'm sorry, Your Honor. Okay. Petitioner. Because you're a petitioner. A different veteran. All right. That is correct. So it's his burden to show who he is. Right. And I believe he did that. Okay. But the IJ didn't think so, right? Well, which is why we're here today. All right. So what – for us, if it's his responsibility to show who he is and the evidence is equivocal or even on some level maybe doesn't prove that, you know, what do you have to show in order – in order to prevail here? Does it have to compel another conclusion or what – how does this all fit in from your perspective? Well, the way it fits in, Your Honor, is that the IJ was saying that Exhibits 3 and 4, as referred to in the FDL letter, do not go to prove identity. I mean, that was not the point of those letters. The documents that were submitted to prove his identity – But are they not relevant to prove his credibility in general? They are eligible to prove his credibility. But right now, Your Honor, we just have – again, they just – it's an equivocal letter that doesn't state definitively one way or the other, and so – No. I'm asking about Exhibits 3 and 4, as to which they're not equivocal. I'm saying – as to Exhibits 3 and 4, which I understand – which it says should not be considered bona fide identity documents. You say, well, they're not really about identity, but they were submitted for a reason, which was to confirm some of what he was saying happened to him. And according to this, there were false documents.  I think it does not, Your Honor, because Respondent testified that he did not create these documents. I'm sorry, he did not. That he was not in Ethiopia. He was not involved in getting these documents, that these documents were obtained when he was already in the United States. And so whether or not there's any question about them, he cannot be held responsible for them, because he did not have anything to do with their creation. I thought he said that as to one of the documents, he was there. First he testified that he received it at the police station, and then he said later, no, we got it at the house while I was still there. Right. He got it at the house, but there's no evidence that he had anything to do with the creation of the document. Right. He got it from the police, and the only question in his he couldn't remember whether or not, as he said, whether or not he received it while he was at the police station or if it came after he left the house, but that there was no question that it came from the police. So his explanation is if they aren't bona fide, it's not my fault. Is that his explanation? Yes, Your Honor. That the police forged it. Well, he's not saying that the police forged it. I mean, again, I do not see that this letter says that the documents were in fact fabricated, because they say we do not have enough information to compare it to. All right. Go ahead. The IJ actually was seemingly aware of the case law about saying that sometimes the Respondent isn't going to be responsible for false documents. And he went into that specifically saying that this is not a case where another person procured the document, and he could say he didn't know anything about it because, as we were saying, because he said he received it in Ethiopia. So why isn't that a reasoned explanation that we have to give credence to? The letter does say it should not be considered bona fide identity documents. It isn't equivocal on that point. That is correct, Your Honor. But if that were the only evidence in the case, then we wouldn't be here. But that was not the only evidence in the case. There were also other documents. One to prove his identity, to prove his ormal ethnicity. Let's assume those things. Let's assume he is who he says he is and comes from the country he says and has had the same ethnic identity that he has. Then the question is what happened to him to show that he was persecuted. And that's what the second set of documents goes to, the ones from the police. Well, Your Honor, Respondent testified that he was arrested in 2001. He was just 16 years old at the time he was arrested. He was taken to the police station for questioning. But that's not the point of his case. The fact is that he was beaten while he was at the police station. Well, that's if the story is credible. And in order to support the story that he was at, he submitted those two documents relating to the fact that he was taken by the police. That is correct, Your Honor. The I.J. found him incredible for other reasons. And we submit that if the Court examines each of those reasons that the I.J. gave, that the reasons do not withstand. Well, let's assume that that's true, too, because a lot of the reasons seem fairly flimsy. I don't know if we have to go through every one of them. But this notion about his name seemed flimsy, the idea that he didn't speak the language proved he wasn't really a Romo and would surprise an awful lot of second-generation immigrants in this country, et cetera. But so let's say what we had was two false documents with regard to the interaction with the police. Would that be enough to sustain an adverse credibility finding? May I continue? Sorry. May I continue, Your Honor? Yes. Your Honor, again, we do not concede that the documents were fake. If they were fake, then yes. Well, the question isn't whether you conceded. The question was whether the I.J. in the face of a forensic determination that they were fake was allowed to determine they were fake. Well, Your Honor, I think the I.J.'s decision was part and parcel of, as you say, his flimsy reasons for not believing the Respondent. If we realize that the flimsy reasons don't support the adverse credibility finding, I do not think that that would have infected his view of the other documents. All right. Thank you, counsel. We'll give you a minute or so for rebuttal. Thank you. May it please the Court, Andrea Geddes, on behalf of the Attorney General, Mr. Ragassa is ineligible for asylum and withholding of removal because substantial evidence supports the agency's finding that he was not credible. Now, as this Court stated in Wang, it only needs one reason or one grounds that it finds supported by substantial evidence. The first reason is that it finds supported by substantial evidence that goes to the heart of the matter and it must uphold the immigration's ---- You concede this is pre-real ID. Correct. I'm sorry, Your Honor. Yes. Okay. This is pre-real ID. I believe it was filed in ---- So it has to go to the heart of the claim. Correct. Right? So in your assessment, you know, we've already spent time with Petitioner's counsel. Which of the inconsistencies do you contend go to the heart of the claim? I'm going to talk about two of the most important ones. One regarding his detention. He gave three different stories regarding the harm he suffered during his detention. At his merits hearing, he testified that he was beaten with the police's hand and kicked and that he suffered harm on his head. And he went above and beyond just saying he suffered harm. He said he had white spots on his head and suffered scars. Now, in his declaration filed with his asylum application, he stated that he was kicked in the leg, slapped in the face, but mentions nothing about any harm to his head. Before the immigration ---- I'm sorry. Before the asylum officer, the asylum officer asked him about what harm he received and the asylum officer's notes say unknown. Now, he was given an opportunity to explain these discrepancies by the immigration judge. The asylum officer didn't testify, right? No, he did not. His report ---- There wasn't a transcript, right? There is a transcript, Your Honor. It's a transcript or it's notes? I'm sorry. It's his notes, yes. Right. So we don't know what unknown means. It doesn't seem to me that maybe he couldn't hear them, maybe he didn't understand them. Maybe who knows what it means. Well, the immigration judge did provide him, did specifically ask him if he understood the asylum officer, which he stated he did. And even if you don't want to ---- Your Honor, doesn't look at the asylum officer, the testimony and the declaration are inconsistent. The IJ provided him with an opportunity to explain, specifically asking why does your declaration say nothing about your head? And he didn't know how to respond. He avoided the question and just went back to when they started kicking me and then describing what happened in the cell, does not explain or try to explain that inconsistency. Now, the second major inconsistency regards or discusses what happens after he was released. He was released from jail, and again he gave three different accounts of what happened. He testified at the merits hearing that he was threatened three times, that he never left his house, and that he was never physically harmed. However, in his declaration, he says he encountered the police several times in the street and was beaten three times by the police. Did he say he never left his house or he said they told me to go home and not leave and I did, but that does not mean never. It means then. He said, let me get your exact language, Your Honor. The only thing I wanted to do after I was released was to go home and stay there, so I stayed at home. Well, I know, but if I said that, I mean, does that really mean I never left my house? Okay, I'm sorry. Let's take the word never out. He didn't leave his house and then said. I mean, it could mean like, hey, I had a bad experience, so I didn't go out unless I absolutely had to. Okay, I'm sorry, Your Honors. Let's just focus on the fact that he says he was threatened and versus in his declaration he says he was beaten. Now, the IJ again provided him an opportunity to explain. He asks about his release and the possible harm he suffered. And the Petitioner, I'm sorry, Mr. Regassa specifically says that he endured no physical harm, just threats, which is inconsistent with his declaration. How do you. Or could it mean that he was beaten but he wasn't harmed? I believe he says just threats. Let me just. On page 137. No physical harm but indiscernible. They were threatening me that they would kill me. Okay. And that's on page 137 at the top. Those are the terms not on the police station. Excuse me, Your Honor. You're not talking about the police station. You're talking about the threats afterwards. Yes, after he was released. Yeah. Correct. Those were just threats after he was released. Yes, that's what I'm speaking about was after the release and the discrepancy between those two. And has this Court already. Excuse me, Your Honor. What's the discrepancy? Well, in his declaration, he says he was beaten after he was released on three separate occasions. However, at his merits hearing, he testified that he was threatened. Well, what he was saying, it says no physical harm but indiscernible. So how do we know what indiscernible might have been? They beat me, but they didn't hurt me. It was indiscernible. Then he says they were threatening me. Right. They could have done both, right? Beaten him and threatened him. I mean, it's a little hard when you're dealing with a non – a plainly defective transcript to say that he – just to come up with what's not there. Yes, Your Honor. Unfortunately, there is an indiscernible. Now, also, the third point would be the false documents. As this Court already discussed, the false documents. And regarding Exhibits 3 and 4, which was the release conditions police letter and the bench warrant letter saying that you've missed your hearing, those two, by the forensic analysis, said they should not be considered bona fide and that the seals were hand-fabricated. That's unequivocal. They weren't saying that – they were regarding the first two, they said we could not get a clear result. Regarding the two that you just talked about, the I.J. says they're probably false. Right. And then the official report on page 148. I know what the official report said, but when the I.J. interpreted that report and gave his reasons, he said they were probably false. Right. Basically. I mean, you might well read those and say they're false. It says – excuse me, Your Honor? But he read them and said they're probably false. Right. And then he said that the bench warrant letter should not be considered bona fide and does not contain – the problem was that they did not contain genuine specimens to be compared, was why they couldn't. But they did say that they were. So how do you process them in terms of the overall assessment? Does that go to his credibility about the beating at the police department? Does it go – is it as to, you know, what is it? Those two would go more towards his credibility, and that's how the I.J. assessed it. He listed out those five reasons that he said were reasons that he found him incredible, the release, which I spoke of, the harm, the identity, his name, and the false documents. What does one make in a case like this of the fact that some of the reasons the I.J. gave seem kind of silly, actually? But, Your Honor, like I mentioned earlier, in weighing this Court, you only need one. I understand that. I understand that. But in fact, if you have an I.J. whose decision-making – I mean, on the one hand, we fault Petitioners for having discrepancies along the way, saying that makes them less believable. Why does it make the whole I.J.'s decision-making process less believable when he says things like, well, because he doesn't speak Aramaic, he must not be a Romo? I mean, there are probably millions and millions of second-generation Hispanic kids here who don't speak Spanish. What does it prove? But, Your Honor, this is the – his Petitioner's burden. This is not the government's burden. The I.J. is the one that's assessing the whole testimony. He's the one that decides one-on-one, here's all the testimony, here's all the documents. I understand that. And if you can tell that at least some of the reasons he's given don't make a whit of sense, doesn't that make you – doesn't that implicate the ones that he does rely on to some degree? Your Honor, the government can tend that it's Petitioner's burden to compel reversal. The immigration gauge gave at least two or three strong reasons, and all it needs is to give us one, as this Court held in Wang. And the immigration judge did have an alternative finding. All right. What about the alternative finding? I'm having trouble with that one as well. Okay. Your Honor, the immigration judge said, even if I do find him credible, he was – did not suffer past persecution on account of a protected ground. And then the immigration judge compared it to our criminal justice system and how – Well, presumably our criminal justice system, I hope, doesn't arrest Oromo kids because they're Oromo kids in order to investigate a terrorist. I mean, basically that would be saying just pick up all Muslim kids in the street because they might know something about terrorists. That is not what the immigration judge was saying. He was just saying that the procedure. He got – Mr. Zorgassa was questioned about being a member or his – or about the And they beat him. I mean, if they didn't beat him, it would have been fine, but they supposedly beat him. And that is part of the credibility issue, Your Honor. Well, is that really about the causal nexus or is it the credibility? I guess it's – That goes more to credibility. But he's saying that it was not on account of protected ground and that he was just questioned about the OLF, released, then given a benchment. Well, so what is the evidence? If – is the evidence, if you assume for a moment that he was questioned about the OLF membership only because he has an OROMO background and name, is that sufficient to establish a causal nexus between persecution and a statutorily protected ground? No, Your Honor. And just to note, Mr. Zorgassa did file his assignment. So you're saying that if you pick somebody up in the street because they're OROMO and beat them to find out about the – about a terrorist group, that's not on account of him being OROMO? Could you repeat the hypothetical? It's not a hypothetical. It seems to be this case. I mean, what you're saying is that if he was picked up because he was OROMO and beaten to get information about a terrorist group because they thought he might know something about it because he was OROMO, that that's not on account of him being OROMO. That's not – the government would contend that that is not this case, Your Honor. Why? He was looking out because of his brother. His brother, the police had previously arrested, had connection with OLF. Therefore, he questioned him about OLF, investigated, concluded that he did not have a connection with the OLF, and then released him. But it is much more than him just being OROMO. It's his brother's tie, the fact that his parents were wealthy. So there is no causal connection, and that's what the immigration judge concluded. So in sum, this Court should deny Mr. Agosta's petition for review because substantial evidence supports the agency's finding that he is not credible. And as I mentioned previously, this Court only needs one ground supported by substantial evidence that goes to the heart of the matter to uphold that adverse credibility finding. And that's it. Any further questions, Your Honors? No, thank you. Thank you. We'll give you one or two minutes to rebuttal. I'm sure, Your Honor, the things that I had to rebuttal already came up in the course of argument, and so I would just feed the balance one more time. Thank you, counsel. You're welcome. The case just argued will be submitted.
judges: Reinhardt, Berzon, Callahan